Owen McGivern, J.
This is an action in equity wherein the plaintiff, one Lina Lett, seeks judgment compelling the defendant to execute quitclaim deeds to two parcels of real property now held by the parties as tenants in common. The action had its origin in Washington Square Park, Manhattan, in June of 1954, when the plaintiff, the mother of a seven-year-old son, met the defendant for the first time. She was separated from her husband, and in the process of being divorced. He, too, was married, but not living with his wife. Despite their widely disparate backgrounds, almost immediately a liaison was formed between the twain, and before long they were living in her Greenwich Village apartment as two untied Bohemians, and on her money. For from the casual beginnings of their unlovely friendship, until the final cleavage in July of 1956, neither did he toil nor did he spin. From her largesse, he received food, shelter, clothing, pocket money, traveling expenses, and a Cadillac to boot.
In the latter part of 1955, the defendant represented to the plaintiff that if she would purchase two parcels of real estate, and allow him to renovate them, at her expense, he would manage them for her and share the profits. Apparently still expecting the defendant to legalize their meretricious relationship, the plaintiff agreed to the scheme, and with her money arrangements were made for the purchase of the properties now before the court. The contracts of sale were signed by the defendant alone, although the moneys came solely from the plaintiff. The deeds, however, came to rest in both their names as tenants in common. The plaintiff maintains she ingenuously assumed that since she was advancing the moneys the properties would be hers, that the defendant had promised to marry her, that he assured her he would execute a separate statement declaring ownership in her, and that he requested the transaction take the form it did so he could find position in the world. And in the negotiations, the plaintiff was in effect not represented by an attorney. This may be a harsh finding, but in the case of the Eleventh Street property, it developed that the attorney who undertook to represent her, the buyer, was also president of the selling corporation. Although he accepted attorney’s fees from her, yet he testified he never conferred with her privately, did not know whether or not she was married to the defendant, and did not inform her of the effect of a deed executed to tenants in common.
*370 Further, the testimony indicates that the plaintiff paid out in the purchases of these properties the sum of $21,500, exclusive of her fees for “ legal services ”, and about $16,000 for renovation of the West Eleventh Street property. In addition, she has spent substantial sums for payment of interest, mortgage amortization, taxes, and sundry other expenses.
The court rules that this is a proper case for equitable intervention, and that by virtue of the strange “ Svengali ” relationship between the parties, the defendant has exercised an overmastering influence over the plaintiff, and that by his overreaching conduct, she has been misled and victimized. There is precedent aplenty for granting the relief requested (Ten Eyck v. Whitbeck, 156 N. Y. 341; Barnard v. Gantz, 140 N. Y. 249; Green v. Roworth, 113 N. Y. 462; 3 Pomeroy on Equity Jurisprudence [5th ed.], § 955). The relief is particularly appropriate in view of the defendant’s failure to sustain his burden of establishing a gift inter vivos (cf. Mazza v. Cillis, 267 App. Div. 266).
Accordingly, there is judgment for the plaintiff to the effect that she is sole owner of the two properties, and the defendant is directed forthwith to give the plaintiff a quitclaim deed of his interest. Settle judgment.