■ In the Matter of the Estate of AUGUSTA R. SULLIVAN, Deceased. · ELIZABETH R. ZENZEN, as Administratrix of the Estate of AUGUSTA R. SULLIVAN,

Deceased, Appellant; Louis Rosencrans, Respondent.— Appeal from an order of the Surrogate's Court, Albany County. The distributees and closest relatives of the decedent Augusta Rockey Sullivan are the respondent Louis Rosencrans, her nephew, and the appellant Elizabeth Rosenkranz Zenzen, her niece. The parties are brother and sister; Mrs. Zenzen is the administratrix of decedent. During her lifetime the decedent set up a joint savings bank account in her own name and that of her nephew, the respondent, payable to the survivor, and the appellant instituted a discovery proceeding before the Surrogate to obtain a direction that the proceeds of the joint account should go, not to respondent as survivor, but to the estate. The Surrogate after a trial held that the joint savings account was properly established and that its proceeds belonged to the respondent. From the spring of 1953 until her death on October 13, 1955, the decedent lived in the home of the nephew. It was while she was living in his home that she transferred the bank account from her name to their joint names. The instrument to effect this transfer was signed August 9, 1954. Decedent was then 83 years old. A short time before this was signed she consulted a lawyer, who has now become the attorney for her nephew and represents him in this proceeding. Arrangement for the lawyer to meet the decedent was made by the nephew; lawyer and decedent were introduced by the nephew at his home; but the lawyer understood the decedent had requested that he come to see her; he testified he consulted with her alone. Decedent told the lawyer that she wanted all her property to go to her nephew on her death. The lawyer testified he explained the effect of a joint account, including the present right of the nephew to make withdrawals from it and the effect of additions to it, and discussed other means of accomplishing the purpose, including the execution of a will, and recommended that the simplest way to accomplish the end she wanted, and to avoid administration expense, was to set the bank account up as a joint account, payable to the survivor. The lawyer testified that she accepted this latter method, and that he had explained to her that the nephew would, while she lived, also have the right to withdraw funds from the account. The amount in this account, which was in an Albany bank, was then $8,661.16. The following month the sum of $12,194.17 which had been withdrawn from decedent's savings accounts in New York City banks was deposited in the Albany joint account. We agree with the appellant that the respondent had the burden of showing that the creation of the joint account "was the true act and deed of the depositor" (*Matter of Creekmore*, 1 N Y 2d 284, 291), which means that he must establish that decedent understood the nature of the instrument she signed and that she was competent to make the decision to sign it. Where the creation of such an account is the "true act and deed of the depositor" the legal intention to vest title in the deposit in joint ownership is conclusively presumed by law in the absence of fraud or undue influence (Banking Law, § 239, subd. 3). The Surrogate found after a full trial that there was no credible evidence of fraud or undue influence, and we regard his finding factually consistent with the record. Appellant argues that because the decedent lived in the respondent's household there is a presumption that the transfer of the account was "void". Such a presumption operative against the transfer under the facts of this case has not been demonstrated from the authorities cited. The rule is that the court will scrutinize with care a transfer of property arising within the frame of such a relationship; not that it is presumed to be void. But even if there were such a presumption we think it would have been met here. It would not be unusual to expect that the decedent would desire all or substantially all her relatively small property to go to one of the two relatives closest to her, where in her last years she lived, and at the

time of the transfer expected to continue to live, with that relative. If she were mentally competent to understand the choice she was making, and if she made it without coercion, we would take it as a matter of course that her decision should be carried out whether effected by will or by the erection of a joint account. Appellant offered proof of her incompetency; but the lawyer who consulted with her, and who talked with her several times, expressed the opinion she was competent; and a physician who was present at one interview also expressed the opinion she was competent. A bank officer testified that " around that time ", which he identified as September, 1954, the decedent had a conversation with him in the bank about the transfer of her accounts in New York to the Albany bank. It is argued that because decedent told the lawyer she wanted to arrange her property so that it would go to her nephew " on her death ", that the thing she actually did, the creation of a joint account, was inconsistent with this and therefore not what she wanted or intended. But this argument does not give due weight to the rest of the lawyer's testimony which was that he explained various ways such a purpose could be effected and that the joint account was one such way; and if the legal effect of this was explained, as the lawyer testified it was, the creation of the joint account could be held to be consistent with such an expressed intent. On the record as a whole we are of opinion that the respondent sufficiently established that the decedent was competent and that the creation of the joint account and her later deposit of additional funds in it were understood and intended by her. Decisions such as *Matter of Creekmore* (1 N Y 2d 284) are not controlling against the decision of the Surrogate. There the factual finding, undisturbed by the Appellate Division and hence accepted by the Court of Appeals, was that the joint accounts were not shown by the surviving claimant to have been " knowingly and consciously created and sanctioned " by the depositor. (P. 289). That is not the finding here, and is not a finding which in our view would be warranted. In *Matter of Yauch* (270 App. Div. 348) the finding was factually against the validity of the transfer, and in *Mazza* v. *Cillis* (267 App. Div. 266) the finding was that the grantor did not intend to execute the kind of deed she signed. Decree affirmed, without costs. Bergan, J. P., Coon, Gibson, Herlihy and Reynolds, JJ., concur.