## JENNINGS v. HENNESSY.

(Supreme Court, Trial Term, New York County. February, 1899.)

1. VOLUNTARY TRUST—REVOCATION.

A voluntary trust created by depositing money in a savings bank in the donor's name in trust for the beneficiary is revoked by the donor surrendering the bank book, and opening a new account in the same bank, designating a new beneficiary.

2. SAME—CREATION—DEPOSIT IN BANK.

A savings bank depositor had the account changed so as to read in her name in trust for a stated beneficiary, to whom she delivered the bank book. *Held* to create a valid trust transferring the beneficial interest in the money to the new beneficiary.

3. CONTRACTS—CAPACITY OF PARTIES.

Mere age does not incapacitate a person from making a valid contract.

Action by William A. Jennings, as administrator of the estate of Henry W. Jennings, deceased, against Walter G. Hennessy, individually and as executor of the last will and testament of Anna Krauth, deceased. Interpleader ordered to try the title to a certain bank account. Judgment for plaintiff.

Eugene H. Pomeroy, for plaintiff.
James A. Lynch, for defendant.

McADAM, J. The issues arising on the interpleader were at the trial narrowed down to the single question whether the money on deposit in the Bowery Savings Bank belonged to the plaintiff or to Walter G. Hennessy individually, and this is all that need be considered. The account was originally opened by Mrs. Krauth in her own name, December 28, 1876; was changed to "Hannah Krauth, in trust for Ann Eliza and E. M. Valentine," December 10, 1879; was restored to her own name February 11, 1881; and was changed to "Hannah Krauth, in trust for William G. Hennessy," March 11, 1885. On July 30, 1890, she surrendered the book containing this account to the bank, and received a new book, which was made out, at her request, to "Hannah Krauth, in trust for Henry W. Jennings." The trust in favor of Hennessy, like the one previously made in favor of the Valentines, was voluntarily created by Mrs. Krauth, of her own money, and was revocable by her at will. Cunningham v. Davenport, 147 N. Y. 43, 41 N. E. 412. It was effectually revoked

when she surrendered the bank book, and opened a new account, designating a new beneficiary. But Mrs. Krauth in this instance did more than change the beneficiary. She delivered the bank book containing the new account to Mr. Jennings as the person entitled to the fund. These acts constituted a valid trust in favor of Jennings, and, unexplained, operated to transfer to him the beneficial interest in the money deposited. Bishop v. Bank, 33 App. Div. 181, 53 N. Y. Supp. 488; Devlin v. Hinman, 34 App. Div. 107, 54 N. Y. Supp. 496; Willis v. Smyth, 91 N. Y. 297; Boone v. Bank, 84 N. Y. 83; Mabie v. Bailey, 95 N. Y. 206; Cunningham v. Davenport, supra. Mrs. Krauth boarded with the Jennings family at the time, and there were reasons for making this provision in their favor, particularly as she had deposited a like sum in the New York Savings Bank in trust for Hennessy, who subsequently received the money. The court should not disturb the disposition made by Mrs. Krauth of her own money, except for some substantial reason. At the time of the transfer to Jennings, Mrs. Krauth was about 82 years of age, and the defendant claims that she was then of unsound mind, and incapable of legally making a change of beneficiaries. "Mere mental weakness, or inferiority of intellect, will not incapacitate a person from making a valid contract; nor is it easy to define the state of mind which will have this effect." 1 Pars. Cont. (6th Ed.) 383. And it is elementary that any person may create a trust who is capable of making a valid disposition of property of any description. A trust once created can be attacked only by a preponderance of evidence proving facts rendering it invalid in law, the burden being on the assailant. Jones v. Jones, 137 N. Y. 610, 33 N. E. 479. Mrs. Krauth's mind was not so weak in 1890 as to disable her from business, or prevent her from acting with apparent intelligence, particularly in money matters. The bank officials intelligently understood her, and there seems to be no legal reason why the intention she deliberately expressed to them should be defeated by awarding the fund contrary to her will. On November 10, 1894, Mrs. Krauth was judicially declared to be an incompetent person, and the finding declares that such incompetency dated back to 1892,—about two years subsequent to the change of beneficiaries. She died September 11, 1897, and Hennessy thereafter qualified as her executor. The evidence offered, by which it was attempted to show the incompetency of Mrs. Krauth in 1890, is simply matter of opinion, founded on an examination made four years afterwards by Dr. Fitch, supplemented by what others had said as to her memory for some years preceding. It proves no condition uncommon to persons of her age, and fails to satisfy the judicial mind that reason had been dethroned prior to 1894. The legal presumption is that Mrs. Krauth was capable of doing what she did, and did precisely what she intended to do. Jones v. Jones, supra. Her age did not disqualify her. The law does not look to age, nor to debility of body, if sufficient intelligence remains. Failure to remember names or incidental and unimportant events may, perhaps, indicate decay of memory; but this failure may exist to a very great degree, and yet the "solid power of understanding" remain. Van Alst v. Hunter, 5 Johns. Ch. 148. To

affect a deed at common law; an entire loss of the understanding had to be shown, for no line has been drawn to show what degree of intelligence is necessary to uphold it, and such a distinction would be impracticable. Jackson v. King, 4 Cow. 207. To overcome the presumption that the creation of the trust in favor of Jennings was a competent and effective act on the part of Mrs. Krauth, it was necessary to show affirmatively that her mental condition at the time precluded the possibility of a just apprehension of the nature of her act, or of an intelligent assent to it (Story, Cont. § 35); or, in other words, "that she did not at the time understand what she was about" (Id. § 37). The evidence falls short of this, and does not justify the finding required to sustain any such contention. Mrs. Krauth had been transferring bank accounts since 1879, and this is the first time her capacity to do so has been challenged. It does not appear that the Jennings family exercised any undue influence over Mrs. Krauth, or that her act was other than voluntary on her part, in gratitude for past kindnesses. There is no legal reason why the disposition she made of her worldly affairs should not be allowed to stand.

Upon the entire case there must be judgment for the plaintiff.

