### HUNTER v. McCAMMON.

(Supreme Court, Appellate Division, First Department. May 17, 1907.)

1. CANCELLATION OF INSTRUMENTS—DEEDS—UNDUE INFLUENCE—EVIDENCE.

In an action to set aside a conveyance by a mother to her daughter as procured by fraud, duress, and undue influence, evidence *held* sufficient to uphold a judgment for plaintiff.

2. SAME—LACHES.

A mother, in seeking to set aside a conveyance to her daughter as procured by fraud, duress, and undue influence, is not bound to take such prompt action as would be required against a stranger.

McLaughlin and Scott, JJ., dissenting.

Appeal from Special Term, New York County.

Action by Carrie Hunter against Sophie G. McCammon to set aside a conveyance as procured by fraud, duress, and undue influence. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before PATTERSON, P. J., and McLAUGHLIN, HOUGHTON, SCOTT, and LAMBERT, JJ.

Nathaniel Cohen, for appellant.
Herbert D. Cohen, for respondent.

HOUGHTON, J. By her industry and economy the plaintiff had acquired real property of the value of about $20,000, besides some additional money with which she had made unfortunate investments. On the 5th day of April, 1900, without any money being paid therefor, she conveyed this real estate to the defendant, her daughter and only child; the conveyance containing a clause that the defendant should execute to the plaintiff a life lease of the premises, and further, as part consideration for the conveyance, that in case the plaintiff should become destitute or unable to support or care for herself the defendant would provide such care and support. The lease was executed and delivered, and in 1905 this action was brought to set aside the conveyance on the ground that it was procured by fraud, duress, and undue influence, and that plaintiff was in such state of mind that she did not comprehend the nature of her act. A decree setting aside the conveyance has been granted, from which the defendant appeals.

While the evidence is meager, we think it is sufficient to uphold the judgment. The plaintiff was old and in feeble health, and disturbed in mind, and had gone to Ithaca, N. Y., respecting some money which she had loaned, and the defendant followed her there and demanded that she be given a deed of the real property, threatening, if this was not done, to have nothing further to do with the plaintiff. According to her own statement the plaintiff did not understand the full purport of the transaction. She says that the defendant procured an attorney to draw the papers, which was done without the title deed, so that any specific description of the property could be given, notwithstanding she pleaded to postpone the execution of the paper until she could consult her own attorney. In addition, the defendant proceeded to acquire whatever else of value the plaintiff had by way of money and jewelry. The plaintiff was ill from time to time, and a patient in several hospitals, and frequently called upon the defend-

ant to care for her and to give her money upon which to live.   Both of these things the defendant refused to do, and for long periods the mother did not know where the defendant was, and was in possession of no address at which she could communicate with her.   In reply to the plaintiff's importunities for care and assistance, the defendant said that it was better for the plaintiff to work, and that she never intended to keep her agreement to take care of her and furnish her money.

From the testimony it is apparent that the plaintiff's mind at the time she executed the conveyance was greatly weakened from illness and anxiety, and that the daughter, by threats of abandonment and promises of comfort and care which she never intended to bestow, persuaded the plaintiff to divest herself of all the property which she possessed.   While it may be impossible to say that any specific testimony meets the legal definition of actual fraud, or duress, or undue influence, yet the evidence, taken as a whole, shows the existence of confidential relations between the mother and daughter, weakened and impaired intellect on the part of the mother, and a strong and overmastering will on the part of the defendant.   This situation imposed upon the defendant the burden of showing that the transaction was fair, open, voluntary, and well understood. Where the relationship between the parties is that of parent and child, principal and agent, or where one party is situated so as to exercise a controlling influence over the will and conduct of another, transactions between them are scrutinized with extreme vigilance, and clear evidence is required that the transaction was understood, and that there was no fraud, mistake, or undue influence.   Where those relations exist there must be clear proof of the integrity and fairness of the transaction, or any instrument thus obtained will be set aside or held as invalid between the parties.   Ten Eyck v. Whitbeck, 156 N. Y. 341, 50 N. E. 963; Green v. Roworth, 113 N. Y. 462, 21 N. E. 165; Rosevear v. Sullivan, 47 App. Div. 421, 62 N. Y. Supp. 447.

The defendant failed to meet this requirement of law, and to show that the mother fully understood the transaction and that the deed was procured without any deception or unfair advantage being taken. The defendant confessed that her promise of support was not given in good faith, and all of her subsequent conduct goes to show that her only object was to get possession of her mother's property by preying upon her fears and deceiving her as to the necessity of the transfer.

The plaintiff's right is not barred by her delay in bringing the action.   The defendant had promised to reconvey on more than one occasion.   In view of the relations between the parties, such prompt action as would be required against a stranger was not a necessity.

We are of the opinion that the judgment is right, and that it should be affirmed, with costs.

PATTERSON, P. J., and LAMBERT, J., concur.

McLAUGHLIN, J. (dissenting).   This is an appeal from a judgment setting aside a deed of conveyance of certain real estate in the city

of New York, executed and delivered on the 5th of April, 1900, by the plaintiff to her daughter, the defendant. The premises, subsequent to the conveyance, were acquired by the New York Central & Hudson River Railroad Company in condemnation proceedings, and the amount paid therefor, $19,500, is now held by the city chamberlain. At the time of the execution and delivery of the deed the daughter executed and delivered to the mother a life lease of the premises conveyed. The mother thereafter remained in possession until the premises were acquired by the railroad company. The conveyance is set aside upon the ground that its execution and delivery were the result of fraud and undue influence of the daughter. As I read the record, there is no evidence justifying a finding to this effect; but, on the contrary, the testimony of the plaintiff herself conclusively disproves it. It may be that the conveyance was induced by what the daughter said; but, if so, it falls far short of proving the fraud or undue influence necessary to be established to justify a court of equity in setting it aside. The mother was old, in poor health, had become involved in litigation concerning the property, and, besides, she had, in speculation a short time before, lost considerable money. Under such circumstances, it is not strange that the daughter should endeavor to have the title to this property, which seems to be substantially all the mother had, secured in such a way that the mother would at least have the use of it during her life. Her purpose in this respect, instead of being condemned, is worthy of commendation.

Nor is there anything in this record to show that the mother took any other view of the transaction until after the property was acquired by the railroad company, and then her dissatisfaction seems to have been, not because she had executed the conveyance to the daughter, but because the daughter did not then buy her another place. The mother testified:

"Q. And you know, in 1902, where she lived (referring to her daughter)? A. The property was not sold then. I did not bring any action then. Why should I? Q. You were satisfied that she should have the property in her name? A. Yes. I was satisfied that she should have this property until she threw me on the street. Q. When did she throw you on the street? A. Was not my house sold?"

The deed, as already said, was given on the 5th of April, 1900, and there was then pending an action which had been brought by the mother to recover damages for certain alleged injuries to or rights in connection with the property. This action came on for trial in June, 1900, and the complaint was dismissed on the ground that the mother had given the deed in question. The daughter was then asked to reconvey, which she refused to do. The mother, referring to such refusal, testified:

"She said it was all right, and said at any time the house was sold we would buy another piece of property. I asked her lots of times to give the deed back to me. She always refused to do so. I said: 'Sophie, this property may be sold. What then?' She turned to me and said: 'Mother, we will buy another piece of property, and we will give it to you on the same terms.' I said: 'All right.'"

Thus matters stood for over five years, or until this action was commenced on the 9th of June, 1905. The mother knew and appreciated what she had done by the giving of the deed when the action above referred to was dismissed in 1900. She then had the advice of counsel, who endeavored to have the daughter reconvey. Under such circumstances, even if the deed were the result of fraud and undue influence, the mother must be deemed to have waived it. One entitled to repudiate a contract on the ground of fraud, or because it was induced by duress, must act promptly on discovering the fraud, or after the removal of the duress; and, if he does not do so, he will be deemed to have waived the fraud or duress and to have ratified the contract. Schiffer v. Dietz, 83 N. Y. 300; O. P. R. R. Co., v. Forrest, 128 N. Y. 83, 28 N. E. 137; Am. & Eng. Enc. of Law (2d Ed.) vol. 10, p. 337. The plaintiff did not act promptly, and therefore, upon that ground, as well as upon the ground of failure to prove either fraud or duress, I am unable to agree with the majority of the court in affirming the judgment. I think it should be reversed, and, the action being in equity, and defendant's attorney having consented at the trial, in open court, that the plaintiff should have a life interest in the fund held by the city chamberlain, a decree should be entered appointing a trustee of the fund for and during the life of the plaintiff, and directing that the income therefrom be paid over to her semiannually, without costs to either party.

SCOTT, J., concurs.